# Attorney General's Authority with Respect to the Regulatory Initiatives of the U.S. Parole Commission

The Attorney General has the authority to require the United States Parole Commission, a component of the Department of Justice for administrative purposes, to participate in Department-wide regulatory coordination that does not entail substantive control of the Commission's regulatory initiatives. The Attorney General thus may require the Commission to submit any proposed regulations to the Office of Management and Budget's Office of Information and Regulatory Affairs through the Department's Office of Policy Development and may also require the Commission to keep OPD informed of any regulatory initiatives under consideration.

The Commission's statutory status as an "independent agency" within the Department precludes the Attorney General as a general matter from asserting substantive control over the Commission's policymaking, including its issuance of regulations. Accordingly, the Attorney General may not require the Commission to obtain OPD approval of its proposed regulations.

October 10, 1990

MEMORANDUM OPINION FOR THE DIRECTOR
OFFICE OF POLICY DEVELOPMENT

This memorandum responds to your request for our opinion as to whether the Attorney General may require the United States Parole Commission ("Commission") to participate in a centralized regulatory coordination process established by the Attorney General at the request of the Office of Management and Budget ("OMB"). Specifically, you asked whether the Attorney General may require the Commission to consult the Office of Policy Development ("OPD") concerning the Commission's regulatory initiatives and to submit proposed regulations to OPD in advance of their submission to OMB's Office of Information and Regulatory Affairs ("OIRA"). As explained more fully below, we conclude that the Attorney General has the authority to require the Commission, as an administrative unit of the Department of Justice, to coordinate its regulatory activities with OPD and other components of the Department. The Attorney General thus may require the Commission to submit any proposed regulations to OIRA through OPD and may also require the Commission to keep OPD informed of any regulatory initiatives under consideration. The Commission's statutory status as an "independent agency" within the Department, however, precludes the Attorney

139

General as a general matter from asserting substantive control over the Commission's policymaking, including its issuance of regulations. Accordingly, the Commission may not be required to obtain OPD approval of its proposed regulations.

I.

On April 10, 1989, the Administrator of OIRA sent a memorandum to the Attorney General stating that OIRA believed that the process of regulatory review and coordination "would be improved if the Department established a single point of contact for working with various Justice offices and OMB staff on the review of rules." Memorandum for Richard Thornburgh, Attorney General, from J. Plager, Administrator, OIRA (Apr. 10, 1989). The memorandum explained that a "single point of contact would help avert confusion over what Departmental regulations are subject to OMB review and speed the overall Justice and OMB review process." *Id.* Pursuant to this recommendation, the Attorney General sent a memorandum on March 14, 1990 to the heads of all components of the Department of Justice outlining new procedures for the coordination of Departmental regulatory initiatives. Memorandum from Dick Thornburgh to All Component Heads (Mar. 14, 1990). In the memorandum, the Attorney General designated OPD as the Department's principal point of contact in the coordination of the regulatory clearance process. The Attorney General's memorandum states that all components "should consult with OPD with respect to proposed regulations at an early stage of the process for informal review," noting that this procedure "will allow OPD to generally coordinate the Department's rulemaking activities, and to identify potential policy inconsistencies informally early on." *Id.* at 2. In addition, when preparation of a proposed regulation is complete, it must be "transmitted to OPD *before* being submitted to OIRA for clearance." *Id.*

The Chairman of the Commission, Mr. Benjamin Baer, has since stated his view that the requirements of the Attorney General's March 14 memorandum do not apply to the regulatory initiatives of the Commission. Memorandum for T. Boyd, Director, Office of Policy Development, from B. Baer, Chairman, U.S. Parole Commission (Apr. 9, 1990). Mr. Baer asserted that, in view of the Commission's status as "an independent agency that promulgates its regulations pursuant to direct statutory authority," it is not subject to the procedures set forth in the Attorney General's memorandum, at least with respect to "the quite narrow issues of paroling policy and procedure that are covered by the Commission's regulations at 28 C.F.R. § 2.1 through § 2.64." *Id.* Mr. Baer assumed that it would "not be objectionable" if the Commission continued to submit its proposed regulations directly to OIRA for review. He noted, however, that "[r]egulatory initiatives such as proposed parole guideline changes that concern specific types of crimes are routinely coordinated with the appropriate DOJ components." *Id.* Mr. Baer

140

also stated that he would "be glad to send any U.S. Parole Commission regulatory initiatives to OPD for comment prior to the Commission's quarterly meetings." *Id.*

## II.

The Commission was established in 1976 as "an independent agency in the Department of Justice." 18 U.S.C. § 4202.[1] The legislative history of the Act that created the Commission states that Congress intended the Commission to be "independent for policy-making purposes" but that the Commission would be "attached to the Department of Justice for administrative convenience." S. Rep. No. 369, 94th Cong., 1st Sess. 14 (1975), *reprinted in* 1976 U.S.C.C.A.N. 335, 336; *see also id.* at 20, 1976 U.S.C.C.A.N. at 342 ("The Commission is attached to the Department for administrative reasons but its decision-making machinery is independent . . . ."); H.R. Conf. Rep. No. 838, 94th Cong., 2d Sess. 20 (1976), *reprinted in* 1976 U.S.C.C.A.N. 351, 353 ("[The Commission is] independent of the Department of Justice for decision-making purposes."). Indeed, the Conference Report on the bill stated that "[t]he Commission is attached to the Department *solely* for administrative purposes." *Id.* at 21, 1976 U.S.C.C.A.N. at 353 (emphasis added); *see also* H.R. Rep. No. 184, 94th Cong., 1st Sess. 4 (1975) ("Except for administrative purposes, the Commission is to be independent of the Department . . . ."). Congress granted the Commission independence from the Department because it wanted to ensure that "parole decisionmaking [would] be independent of, and not governed by, the investigative and prosecutorial functions of the Department of Justice." 1976 U.S.C.C.A.N. at 353; *see also* S. Rep. No. 369, at 20, 1976 U.S.C.C.A.N. at 342 ("[The Commission's] decision-making machinery is independent so as to guard against influence in case decisions.").[2]

The Commission possesses independent statutory authority to "promulgate rules and regulations establishing guidelines for the [Commission's powers] and such other rules and regulations as are necessary to carry out a national parole policy." 18 U.S.C. § 4203(a)(1). Pursuant to this authority, the Commission has promulgated regulations relating to the standards and procedures governing the granting, regulation, and revocation of parole. *See* 28 C.F.R. §§ 2.1-2.66 (1989). The amendment of these regulations or the adoption of new regulations, if "necessary to carry out a national parole policy," is within the range of "policy-making" activities that Congress intended to be

---

[1] Chapter 311 of title 18 of the U.S. Code, consisting of sections 4201-4218, was repealed by section 218(a)(5) of Pub. L. No. 98-473, 98 Stat. 1837, 2027 (1984), effective Nov. 1, 1986. Section 235(b)(11)(A) of Pub. L. No. 98-473, 98 Stat. at 2032, provides, however, that chapter 311 shall remain in effect for five years after Nov. 1, 1986, as to certain specified individuals.

[2] The fact that the Commission is independent for policy-making purposes from the Attorney General does not in itself present a constitutional problem. Nothing in the statute creating the Commission purports to limit the *President*'s constitutional authority to supervise and control the Commission. Indeed, the Commission has always submitted its proposed regulations to OIRA for review.

generally independent from direct Departmental control. Although the adoption of a particular regulation might not compel a specific result in any given parole decision, Congress's grant of independent regulatory authority to the Commission, which Congress intended to be independent from the Department for "policy-making purposes," confirms that the Commission's independence is not limited to decisions in individual cases, but extends to the issuance of regulations governing the granting, regulation, and revocation of parole. Accordingly, we conclude that the Attorney General may not require the Commission to obtain OPD approval of its proposed regulations.[3]

Because the Commission remains "attached" to the Department for administrative purposes,[4] however, the Attorney General may require the Commission to participate in Department-wide regulatory coordination that does not entail substantive control of the Commission's regulatory initiatives. For example, this office previously informed the Commission that it was required to participate in the preparation of a unified calendar of the major regulations then under development in the Department, which was to be used by the President's Regulatory Council. Memorandum for Cecil C. McCall, Chairman, United States Parole Commission, from Larry A. Hammond, Deputy Assistant Attorney General, Office of Legal Counsel (Dec. 8, 1978). The Commission was also subject to the Attorney General's order providing for Departmental review of the Semi-Annual Agenda of Regulations that was required to be prepared under Executive Order No. 12044 by each component. Memorandum to Heads of Offices, Boards and Divisions (including the U.S. Parole Commission), from Larry A. Hammond, Deputy Assistant Attorney General, Office of Legal Counsel (May 14, 1979); *see also* Report on the Implementation of Executive Order No. 12044, "Improving Government Regulations", Att'y Gen. Order No. 831-79, § 111(A)(5), 44 Fed. Reg. 30,461, 30,463 (1979). Similarly, we believe that the Attorney General may require the Commission to keep OPD informed of its pending regulatory initiatives, so long as OPD does not thereby acquire any power to disapprove or delay the Commission's proposed regulations. The Attorney General may also require the Commission to submit its proposed regulations to OIRA through OPD, provided that OPD does not exercise substantive approval authority over the regulations.

---

[3] We note that OMB's memorandum to the Attorney General did not purport to delegate to the Attorney General the President's authority to oversee and supervise the substantive actions of the Commission. Therefore, we do not address whether the Attorney General could properly exercise, through delegation, the President's oversight authority, notwithstanding the Commission's statutory status as an "independent agency within the Department."

[4] Congress has expressly provided, however, that the Commission's budgetary requests shall be separate from those of any other component of the Department. 18 U.S.C. § 4203(a)(3) (1982).

# CONCLUSION

We conclude that the Attorney General may require the Commission, a component of the Department for administrative purposes, to inform OPD of its regulatory initiatives and may also require the Commission to submit its proposed regulations to OIRA through OPD. The Commission's statutory status as an independent agency in the Department, however, prevents the Attorney General from requiring the Commission to obtain substantive approval of its proposed regulations from OPD.

J. MICHAEL LUTTIG
*Acting Assistant Attorney General*
*Office of Legal Counsel*